UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALISHER ISMOILOV, | Case No. ED CV 26-00450 FMO (DSR) |
| Petitioner, | |
| v. | ORDER RE: EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER |
| DAVID MARIN, et al., | |
| Respondents. | |

On February 2, 2026, pro se petitioner Alisher Ismoilov ("petitioner") filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition") against David Marin, the Warden of the Adelanto ICE Processing Center; Todd Lyons, the Acting Director of Immigration and Customs Enforcement ("ICE"); Thomas Giles, the Director of the Los Angeles ICE Field Office; Kristi Noem, Secretary of the U.S. Department of Homeland Security ("DHS"); and Pam Bondi, U.S. Attorney General (collectively, "respondents"). (See Dkt. 1, Petition at ¶¶ 7-10). Through the Petition, petitioner seeks an order granting his immediate release from custody. (Id. at ECF 25). That same day, petitioner filed an Ex Parte Application for a Temporary Restraining Order ("Application"), seeking the same relief requested in the Petition. (Dkt. 2, Application at ECF 16). Respondents filed their Opposition to the Application on February 5, 2026, (Dkt. 6, Opp.).

Having reviewed and considered all the briefing filed with respect to petitioner's Application, the court finds that oral argument is not necessary to resolve the Application, see Fed. R. Civ. P.

78; L. R. 7-15; Willis v. Pac. Mar. Ass'n, 244 F.3d 675, 684 n. 2 (9th Cir. 2001), and concludes as follows.

## STATEMENT OF FACTS

Petitioner, a citizen of Russia, is currently detained at the Adelanto Detention Center in Adelanto, California. (Dkt. 1, Petition at ¶¶ 1, 12); (Dkt. 2, Exh. 1, I-94 Form); (Dkt. 2, Exh. 3, NTA at ¶ 2). On May 13, 2023, he was paroled into the United States pursuant to 8 U.S.C. § 1182(d)(5)(A).[1] (See Dkt. 1, Petition at ¶ 2 & ECF 7); (Dkt. 2, Exh. 1, Form I-94 at ECF 20).[2] Petitioner's parole was set to expire on April 6, 2025. (Dkt. 2, Exh. 1, Form I-94 at ECF 20). Since his parole, petitioner has complied with all instructions issued to him by respondents, including attending regularly-scheduled check-ins with ICE. (Dkt. 1, Petition at ¶ 2).

On January 25, 2024, a Notice to Appear was issued[3] charging petitioner with being "an immigrant not in possession of" (1) "a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Immigration and Nationality Act," or (2) "a valid unexpired passport, or other suitable travel document, or document of identity and nationality." (Dkt. 2, Exh. 3, NTA at ECF ¶¶ 3-4). On December 1, 2024, ICE directed petitioner to attend a check-in on December 4, 2024. (Dkt. 1, Petition at ECF 7). Petitioner attended the check-in as instructed, but was "detained without any notice or explanation[.]" (Id.). According to immigration paperwork submitted as an exhibit to petitioner's Application, petitioner was arrested "pursuant to a Warrant of Arrest with [ICE] as a National Security Interest Case[.]" (Dkt. 2, Exh. 2, Form I-213 at ECF 23). However, no warrant is part of the record, and respondents did

---

[1] Unless otherwise indicated, all future statutory citations will be to Title 8 of the U.S. Code.

[2] Petitioner's I-94 form reflects that on May 13, 2023, he entered the United States under the "DT" class of admission. The "DT" class of admission signifies admission for humanitarian reasons. See, e.g., Osuna Benitez v. Hermosillo, 2025 WL 3763932, *3 (W.D. Wash. 2025) ("Petitioner's class of admission was 'DT' signifying admission for humanitarian reasons[.]").

[3] This Notice to Appear was served on petitioner by mail, (see Dkt. 2, Exh. 3, NTA at ECF 28), but petitioner claims he never received it. (See Dkt. 1, Petition at ECF 7) ("ICE took all his information and address and told him he will send all information to him by mail, but petitioner never received anything."). For the purposes of this order, it is unnecessary to determine whether petitioner received this Notice to Appear.

not address the reason for petitioner's arrest, (see, generally, Dkt. 6, Opp.), much less contest petitioner's allegation that he was arrested without explanation during his check-in.

Petitioner has been detained at the Adelanto Detention Center since his December 4, 2024 check-in. (Dkt. 1, Petition at ¶ 3). Removal proceedings – including included numerous hearings before the immigration judge, (see id. at ECF 7-8), and the submission of petitioner's I-589 application for asylum, withholding of removal, and protection under the Convention Against Torture, (see Dkt. 2, Exh. 5, I-589 at ECF 34-35) – have been ongoing throughout 2025 and remain ongoing now. No decision has been issued as to his asylum application, and petitioner's next individual hearing in immigration court is scheduled for February 24, 2026. (See Dkt. 1, Petition at ECF 8 & ¶ 52).

Prior to his arrest by ICE, petitioner had lived in the United States for approximately 19 months, during which time he attended all ICE check-ins and court appointments, established ties in the community, and was in the process of obtaining a work permit. (Dkt. 1, Petition at ¶¶ 41-42). Petitioner now challenges the legality of his detention, alleging that the revocation of his parole and subsequent detention violated his due process rights under the Fifth Amendment.[4] (Id. at ¶¶ 34-44).

## **LEGAL STANDARDS**

I.   TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION.

Federal Rule of Civil Procedure 65 provides courts with the authority to issue preliminary injunctions or temporary restraining orders ("TRO"). See Fed. R. Civ. P. 65(a) & (b). The purpose of a preliminary injunction "is to preserve the status quo and the rights of the parties until a final judgment" on the merits can be rendered, see U.S. Philips Corp. v. KBC Bank N.V., 590 F.3d 1091, 1094 (9th Cir. 2010), while the purpose of a TRO is to "preserv[e] the status quo and prevent[] irreparable harm just so long as is necessary to hold a hearing" for the preliminary

---

[4] In Counts Three through Seven, petitioner further alleges that the revocation of his parole and re-detention by ICE violated numerous provisions and requirements of the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, et seq. (See Dkt. 1, Petition at ¶¶ 45-79). Because the court finds the due process issues raised in petitioner's Application and Petition to be dispositive, it need not address petitioner's APA arguments.

injunction. Reno Air Racing Ass'n., Inc. v. McCord, 452 F.3d 1126, 1131 (9th Cir. 2006) (quoting Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty., 415 U.S. 423, 439, 94 S.Ct. 1113, 1124 (1974)). The standards for a temporary restraining order and a preliminary injunction are the same. See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 839 n. 7 (9th Cir. 2001); NML Capital, Ltd. v. Spaceport Sys. Int'l, L.P., 788 F.Supp.2d 1111, 1117 (C.D. Cal. 2011) (same). "Like a preliminary injunction, a temporary restraining order is 'an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.'" Six v. Newsom, 462 F.Supp.3d 1060, 1067 (C.D. Cal. 2020) (quoting Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22, 129 S. Ct. 365, 376 (2008)).

A petitioner seeking a preliminary injunction or TRO must establish that: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. Winter, 555 U.S. at 20, 129 S.Ct. at 374. Under the Ninth Circuit's "sliding scale" approach, "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." All. for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011). "For example, a stronger showing of irreparable harm to plaintiff might offset a lesser showing of likelihood of success on the merits." Id. The last two Winter factors "merge when the Government is the opposing party." Nken v. Holder, 556 U.S. 418, 435, 129 S.Ct. 1749, 1762 (2009).

II. STATUTORY AND REGULATORY FRAMEWORK.

The court recently discussed the scope of respondents' detention authority under §§ 1225(b) and 1226(a), and set forth the statutory and regulatory framework applicable to the issuance and revocation of parole granted pursuant to § 1182(d)(5)(A). In the interest of expediency, the court adopts that discussion here. See Jarquin-Gadea v. Noem, et al., Case No. CV 25-2800 (Dkt. 13, Court's Order of November 17, 2025, at 6-12).

/ / /

/ / /

**DISCUSSION**

Petitioner contends that injunctive relief is warranted because he "is almost certain to prevail on at least one of the claims" in the Petition.[5] (Dkt. 2, Application at ECF 6 & 6-12). In their Opposition, respondents acknowledge that petitioner "appears to be a member of the Bond Eligible Class certified in Maldonado Bautista v. Santacruz," 2025 WL 3713987 (C.D. Cal. 2025), and suggest that "to the extent [he] would be entitled to any remedy via the TRO Application, at most it would be ordering a bond hearing to be held before an Immigration Judge under Section 1226(a)." (Dkt. 6, Opp. at 2-3). According to respondents, petitioner is "unable to show any violations of due process on the part of the Respondents that compels his release from detention[,]" because he is already "being afforded all due process under the law in his ongoing immigration proceedings[.]" (Id. at 2).

I. LIKELIHOOD OF SUCCESS ON THE MERITS.

    A.    Petitioner is Likely to Succeed on the Merits of His Procedural Due Process Claim.

"[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693, 121 S.Ct. 2491, 2500 (2001). "It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." Trump v. J. G. G., 604 U.S. 670, 673, 145 S.Ct. 1003, 1006 (2025) (internal quotation marks omitted). Although "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process[,]" Demore v. Kim, 538 U.S. 510, 523, 123 S.Ct. 1708, 1717 (2003), due process "requires some kind of a hearing before the State deprives a person of liberty or property." Zinermon v. Burch, 494 U.S. 113, 127, 110 S.Ct. 975, 984 (1990).

---

[5] Because the court finds petitioner's procedural due process argument concerning his rights associated with his parole status to be dispositive, it limits its analysis to that issue.

5

Petitioner's procedural due process claim[6] involves two steps: "the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." Fernandez Lopez v. Wofford, 2025 WL 2959319, *3 (E.D. Cal. 2025) (internal quotation marks omitted). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600 (1972). To determine what protections due process demands in a given situation, courts consider three factors: (1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of such interest through the procedures used, and the probable value of additional safeguards; and (3) the government's interest, including the function involved and the burdens that would be imposed by additional process. See Mathews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 903 (1976).

    **1.    Petitioner Possesses a Liberty Interest in Remaining Out of Custody**.

Here, petitioner invokes "the most significant liberty interest there is – the interest in being free from imprisonment." Velasco Lopez v. Decker, 978 F.3d 842, 851 (2d Cir. 2020). While "the initial decision to detain or release an individual may be within the government's discretion, the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if they fail to live up to the . . . conditions of release.'" Pinchi v. Noem, 792 F.Supp.3d 1025, 1032 (N.D. Cal. 2025) (alteration marks omitted). Accordingly, "[w]hen an immigrant is placed into parole status after having been detained, a protected liberty interest may arise[,]" and the "Due Process Clause may protect this

---

[6] Respondents do not meaningfully contest petitioner's due process argument. (See, generally, Dkt. 6, Opp.). Instead, respondents merely argue that they are "broadly authorized to exercise their discretion to revoke release under this authority pursuant to 8 C.F.R. § 241.1(l)(1), and 8 C.F.R. § 241.4(l)(2)." (Id. at 2). Title 8 C.F.R. § 241.4 governs the detention of "inadmissible, criminal, and other aliens beyond the removal period." But no removal order has been issued, so petitioner cannot possibly fall within the removal period. Indeed, the regulation cited by respondents explicitly limits its applicability to four categories of noncitizens already ordered removed, certain noncitizens who have filed a motion to reopen, and certain individuals granted withholding or deferral of removal. 8 C.F.R. § 241.4(a)(1) - (4); id. at § 241.4(b)(1), (b)(3). Petitioner does not fall within any of these categories.

liberty interest even where a statute allows the immigrant's arrest and detention and does not provide for procedural protections." Espinoza v. Kaiser, 2025 WL 2675785, *9 (E.D. Cal. 2025).

Respondents' decision to grant parole to petitioner in 2023 "reflect[ed] a determination by the government that the noncitizen is not a danger to the community or a flight risk." Fernández López, 2025 WL 2959319, at *2 (internal quotation marks omitted). The grant of parole "constituted an implied promise that [his] liberty would not be revoked unless [he] failed to live up to the conditions of [his] release." Pinchi, 792 F.Supp.3d at 1034 (internal quotation marks omitted); see e.g., Sharif, et al. v. F. Semaia, et al., Case No. ED CV 25-2834 (Dkt. 8, Court's Order of November 26, 2025 at 2, 7-8) (finding that noncitizen petitioners who arrived to Dulles International Airport and were paroled into the country under 8 U.S.C. § 1182(d)(5)(A) gained a protected liberty interest in their release). In short, petitioner has a protected liberty interest in remaining out of custody absent a showing that he poses a risk of flight or danger.[7]  See, e.g., Fernández López, 2025 WL 2959319, at *4-5 (finding that petitioner released from immigration detention on parole pursuant to § 1182(d)(5)(A) had protected liberty interest in remaining out of custody); Noori v. Larose, 2025 WL 2800149, *4, 9-10 (S.D. Cal. 2025) (finding that petitioner who was paroled from immigration detention under § 1182(d)(5)(A) had protected liberty interest in remaining out of custody).

That petitioner's parole may have expired when a Notice to Appear was issued,[8] (Dkt. 2, Exh. 3, NTA at ECF 27), is irrelevant because "petitioner's liberty interest did not expire along with his parole." Omer G.G. v. Kaiser, et al., 2025 WL 3254999, *5 (E.D. Cal. 2025); see, e.g.,

---

[7] Also, petitioner's liberty interest strengthened with time and reliance. Nearly 19 months elapsed between petitioner's parole and his arrest on December 4, 2024. (See Dkt. 2, Exh. 1, I-94 Form at ECF 20) (reflecting parole date of May 13, 2023); (Dkt. 1, Petition at ¶ 3) (alleging that petitioner was arrested on December 4, 2024). During that time, petitioner attended all required ICE check-ins and court appointments, established ties in the community, and was in the process of obtaining a work permit. (Dkt. 1, Petition at ¶¶ 41-42). The community ties established by petitioner "underscore the high stakes of [his] liberty." See Pinchi, 792 F.Supp.3d at 1033.

[8] Pursuant to 8 C.F.R. § 212.5(e)(2)(i), "[w]hen a charging document is served on the alien, the charging document will constitute written notice of termination of parole [granted under 8 U.S.C. § 1182(d)(5)(A)], unless otherwise specified."

Ramirez Tesara v. Wamsley, 800 F.Supp.3d 1130, 1136 (W.D. Wash. 2025) (finding, on similar facts, that "[c]ontrary to Respondents' arguments, this private interest did not expire along with Petitioner's parole agreement."). Put differently, the fact "[t]hat the express terms of Petitioner's parole allowed for discretionary termination or expiration does not somehow obviate the need for the government to" comport with due process "prior to re-detaining him given the significance of his liberty interest." Rodriguez Cabrera, 2025 WL 3072687, *11 (D. Nev. 2025). The first Mathews factor therefore weighs strongly in favor of petitioner.

### 2. Petitioner Was Entitled to Notice and a Pre-Deprivation Bond Hearing Prior to His Re-Detention.

Under the applicable regulatory framework, petitioner's parole terminated on the date a charging document was served on petitioner. See 8 C.F.R. § 212.5(e)(2)(i). But determining whether respondents provided petitioner with the required notice of his parole termination would not resolve the question before the court, i.e., whether respondents provided petitioner with sufficient due process prior to his re-detention. See Rodriguez Cabera, 2025 WL 3072687, at *10 ("The Court finds, however, that it need not decide this statutory question to resolve Petitioner's due process challenge to his ongoing detention. The central inquiry for the Court is whether Petitioner's re-arrest and detention without the opportunity for release on bond satisfies due process."). Because § 1182(d)(5)(A)'s "enacting regulations [do not] provide any procedure for a noncitizen to challenge the revocation or expiration of parole[,]" Rodriguez Cabera, 2025 WL 3072687, at *13, there is, in effect, no procedural safeguards to determine if re-detention is justified.

To be sure, the record indicates that respondents may have detained petitioner months after the termination of his parole pursuant to an administrative warrant issued by ICE. (See Dkt. 2, Exh. 2, Form I-213 at ECF 23). But under the circumstances here, due process requires that respondents provide petitioner with notice and a pre-deprivation bond hearing prior to his detention. See, e.g., Ramirez Tesara, 800 F.Supp.3d at 1137 (granting TRO and ordering that petitioner, who was re-detained months after the expiration of his parole, "should be released and only re-detained after a hearing [in] front of an immigration judge"); Rodriguez Cabrera, 2025 WL

3072687, at *15 (granting habeas petition where petitioner was re-detained three years after the expiration of his parole, and enjoining the government "from re-detaining Petitioner in connection with his current removal proceedings without an individualized bond hearing"); see also Valdez v. Joyce, 2025 WL 1707737, *4 (S.D.N.Y. 2025) ("In the context of revocation of civil release, an individual whose release is sought to be revoked is entitled to due process such as notice of the alleged grounds for revocation, a hearing, and the right to testify at such a hearing.") (internal quotation marks omitted). In short, the court finds, under the second Mathews factor, that the risk of an erroneous deprivation of petitioner's liberty interest is high. See, e.g., Fernández López, 2025 WL 2959319, at *6 ("[T]he risk of an erroneous deprivation [of liberty] is high where, as here, [the petitioner] has not received any bond or custody redetermination hearing.") (internal quotation marks omitted); Escobar Salgado v. Mattos, et al., 2025 WL 3205356, *24 (D. Nev. 2025) ("The risk of erroneous deprivation is extraordinarily high where ICE and DHS agency officials have sole, unguided, and unreviewable discretion to detain Petitioners without any individualized showing of why their detention is warranted, nor any process for Petitioners to challenge the exercise of that discretion.").

### 3. Respondents' Interest Does Not Outweigh the First Two Factors.

"As to the third and final Mathews prong, the Attorney General's discretion to detain individuals . . . is valid where it advances a legitimate governmental purpose, such as ensuring the appearance of aliens at future immigration proceedings and preventing danger to the community." Maldonado, 2025 WL 2772765, at *10 (internal quotation marks and alterations omitted). But respondents do not contend that petitioner was detained for such purposes. (See, generally, Dkt. 6, Opp.). Indeed, over the nearly 19 months that petitioner was released on parole, he complied with his immigration requirements, (Dkt. 1, Petition at ¶¶ 2-3), and there is nothing in the record to establish that petitioner poses a flight risk or a danger to the community. Thus, respondents have "failed to show a significant interest in Petitioner's continued detention." Maldonado, 2025 WL 2772765, at *10.

Because each of the Mathews factors favors petitioner, the court finds that he has shown a likelihood of success on the merits of his procedural due process claim.

## II. LIKELIHOOD OF IRREPARABLE HARM.

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting Elrod v. Burns, 427 U.S. 347, 373, 96 S.Ct. 2673, 2690 (1976)); see Hernandez v. Sessions, 872 F.3d 976, 994-95 (9th Cir. 2017) (recognizing the "irreparable harms imposed on anyone subject to immigration detention" and holding that plaintiffs had "established a likelihood of irreparable harm by virtue of the fact that they are likely to be unconstitutionally detained for an indeterminate period of time"). Where "an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." Warsoldier v. Woodford, 418 F.3d 989, 1001-02 (9th Cir. 2005) (internal quotation marks omitted). Here, there is no doubt that petitioner has been and will continue to be irreparably harmed by the continued deprivation of his liberty in violation of his due process rights.

## III. BALANCE OF THE EQUITIES AND PUBLIC INTEREST.

The final two merged factors likewise weigh heavily in favor of petitioner. Although the government has a compelling interest in the enforcement of its immigration laws, that interest cannot justify the violation of petitioner's constitutional rights. See Index Newspapers LLC v. U.S. Marshals Serv., 977 F.3d 817, 838 (9th Cir. 2020) ("It is always in the public interest to prevent the violation of a party's constitutional rights.") (internal quotation marks omitted); Vargas v. Jennings, 2020 WL 5074312, *4 (N.D. Cal. 2020) ("Just as the public has an interest in the orderly and efficient administration of this country's immigration laws . . . the public has a strong interest in upholding procedural protections against unlawful detention.") (internal quotation marks and citation omitted); Valle del Sol Inc. v. Whiting, 732 F.3d 1006, 1029 (9th Cir. 2013) ("[I]t is clear that it would not be equitable or in the public's interest to allow the [government] . . . to violate the requirements of federal law[.]") (internal quotation marks omitted).

## **CONCLUSION**

Based on the foregoing, IT IS ORDERED THAT:

1. Petitioner's Ex Parte Application **(Document No. 2)** is **granted** as set forth in this Order.

2. Respondents shall release petitioner from immigration detention forthwith, and shall not impose any release restrictions (e.g., electronic monitoring,) on petitioner that were not in place prior to petitioner's arrest or detention in this case unless deemed necessary at a future pre-deprivation bond hearing.

3. Respondents shall file with the court a Notice of Compliance within twenty-four (24) hours of releasing petitioner.

4. Respondents shall not re-detain petitioner during the pendency of these proceedings without providing petitioner with, at minimum, individualized notice describing the change in circumstances necessitating his arrest and/or detention, and a pre-deprivation bond hearing before an immigration judge. Petitioner shall not be detained unless respondents demonstrate at the pre-deprivation hearing that petitioner is a flight risk or a danger to the community, and that there are no combination of conditions that will reasonably assure petitioner's appearance and/or the safety of any other person in the community. If petitioner is again placed into detention in this District following proceedings in this case, respondents shall not transfer or remove petitioner from this District unless executing a final order of removal issued against petitioner.

5. Given that the standard for granting a TRO and preliminary injunction are the same, Stuhlbarg Int'l Sales Co., 240 F.3d at 839 n. 7, the court will construe petitioner's Application as an application for a preliminary injunction ("PI Application").

6. Respondents shall file their opposition to the PI Application by no later than **February 12, 2026**. Failure to file their opposition by the deadline set forth above shall be deemed as consent to the granting of the PI Application.

7. Petitioner shall file his Reply in support of his PI Application by no later than **February 19, 2026**.

8. The court shall decide, after reviewing the parties' papers, whether to hold a hearing on the PI Application or take the PI Application under submission.

Dated this 9th day of February, 2026.

                                              /s/
                                    Fernando M. Olguin
                              United States District Judge